Good morning, Your Honors. My name is Karen Bucher, and I represent Stanley Ramsey. In this case, the question before the jury was, what object did Mr. Ramsey throw? Was it a gun or was it the metal Altoids-type box? The jury was faced with the conflict in the evidence, so the jury requested to hear both. Officer Hastings. Counsel? Yes. I have one or two specific questions on this case. One is, I guess trial cultures differ in various places. I have often seen jury testimony read back to jurors. I occasionally allowed it as a district judge, and I occasionally saw it in state court when I was litigating. And I've never, ever seen a final argument read back to jurors because the judge instructs the jurors it's not evidence. And instructs the jurors that the law they're supposed to decide the case under is what the judge gives them. So the suggestion that the judge abused his discretion by letting the policeman's testimony but not the final argument be read back seems really odd to me. It seems like, well, of course you let the testimony and not the final argument be read back. What am I missing here? The argument is that the jury wanted to hear the voice of the defendant at the same time as listening to the prosecution's witness. And closing argument isn't evidence, but it's a tool that the jury could use in order to interpret the evidence. And the case cited by the government in this 28-J letter is really helpful at this point. Have you ever seen a case where a judge let a final argument be read back? No, except for in the case cited by the government from the Second Circuit, where the district court allowed the prosecution's rebuttal summation be read back to the jury along with some testimony. And the Second Circuit said that was prejudicial to the client and reversed the case. But it said something very interesting at the end. So the Second Circuit said where the final argument was read back to the jury, that was wrong and reversed. Except they said there could be a case where the read back of summation would be appropriate when it would aid the jury in resolving factual issues. The example the Second Circuit gave was if the summation would help in a complex case, complex financial case. This case is unique because the jury was struggling with two conflicting facts. The jury heard evidence that the officer ---- That's quite different. I mean, it's, you know, I think good trial practice is not reading back summations. But to say that a court did not in a particular case abuse its discretion by allowing something to be read and to say it abused its discretion by not allowing it are like two totally different things. I mean, if the normal thing is not to allow summations to be read back, which I think is the norm, then it's hard for a judge to excuse his ---- abuse his discretion by following the norm. But under the facts of this case, and this case is unique because the jury requested a simultaneous request of having read back of the ---- What's so complicated or unique? A thrown down gun, really nice gun, not the kind of gun that people would ordinarily discard. Especially if they paid less price for it. I think that the jury was struggling with ---- And the only question is, did he throw down the gun or did he throw down his metal crack box and the cop was either lying or mistaken when he said it was a gun? Simple. I think it was a mistake. I think what the jury was struggling with, the officer was only 15 feet behind him. And the officer testified he could see a street sign 20 feet ahead. And he said he had an unobscured view of the object as it left Mr. Ramsey's hand. And the picture of the gun is in the excerpt of the record and it has a long barrel. It would be very hard to miss that. Okay. But the judge did a very wise thing here. He had the policeman's testimony in its entirety with cross read back. Nope. Not picking and choosing parts. But presumably if there was a vision problem it would have been examined in cross, right?  He did do that. It was the entire direct in cross. But under this case, I think the jury wanted to hear the defense explanation of how the gun was there. Because a jury wants to hear something, it's an abuse of discretion to deny their request when it's not evidence? I mean, the jury's desire isn't everything. I think they wanted to understand the defense point of view of how the gun was there. Officer Hastings and the closing arguments were done on the same day. So they both heard the same, heard both very recently in time. I think they wanted to compare at the same time simultaneously both viewpoints. The defense had no other witnesses for the jury to draw from. So the only thing that they had available was defense counsel's closing arguments. And if the Court has no further questions, I'll reserve my time for rebuttal. Thank you. Thank you, Counsel. May it please the Court, Michael Beckwith on behalf of the United States. Your Honor, unless you have further questions about the possible readback of closing argument, I'll move on past that.  Yes, ma'am. When the Court allowed the readback, did it instruct the jury not to emphasize this particular testimony, but to consider all of the testimony and not focus on this readback testimony? Your Honor, it did part of what you just said. In two of its jury instructions, it did say... I'm not talking about the general jury instructions. I'm talking about when the readback was done. No, there was no formal admonition specifically connected to the readback. But Judge Carlton does have a unique reasonable doubt instruction, which, of course, arguably is one of the most important instructions that a jury has to consider. And it does ask the jury to consider specifically all the testimony. Well, that's not unusual. That's not an unusual instruction. My question then is because the Court did not specifically instruct the jury not to focus on the readback testimony, is that an error? No, Your Honor. The error analysis here, first of all, is under plain error, because there's no objection. But the analysis of whether or not the judge took the correct steps to prevent undue emphasis is a totality of the circumstances analysis. And in several cases, the concern with or the requirement for an admonition, a particular admonition, comes in the context of when a transcript is provided to the jury. And as the Court in Asseco and Hernandez both pointed out, that there is additional risk involved with transcript cases, because the jury has that transcript back in the deliberations room, they can go over it again and again. And so in those cases, it's even more important to have that admonition. I believe in this case, because the entire transcript or the entire testimony about direct and cross was provided to the jury in only one time with a direct read, the need for that instruction was not as imperative as it might be in other cases. What case authority supports your argument that when there's readback, there's a readback of testimony, there's no need to caution the jury not to focus on that testimony? Your Honor, it's not that there's no need. It's just that the need is reduced. And in the totality of the circumstances, it's not as essential. I would point to SACO. Which one? That's a 1989 case. What about the Richard case that just came out? Yes, Richard, of course, does give us a list. But Richard also points to the fact that this is not enhanced data, that there's this analysis is something that's somewhat subtle. There's a great discretion that's given to the court of what to allow to be readbacked. Right, but what it, I'm not talking about the decision to readback. I'm talking about how you make sure that there is no, that there is no prejudice. There is no undue focus on the testimony that's readbacked. What, you know, how do you answer Richard's requirement in that review, in that regard? Yes, ma'am. I would first point to the fact that Richard's does not mandate all of these four requirements. It certainly says that these are helpful, but there is no specific panacea that can respond to it. And so the fact that in this case, the totality of the circumstances may not mandate or require the readback, or excuse me, the admonition, which, of course, is listed in Richard's as one of the things that is helpful to reduce the potential. What do you think about this language? Although there is no panacea for the inherent risk of undue emphasis resulting from the playback or rereading a witness testimony during jury deliberations, current precautions must generally be taken to avoid that risk. Yes. What do you make of that language? Well, I think it's somewhat confusing, because it does say must generally. And I think that the dissent in this case says that this, you know, the majority is listing a new set of rules, a hard and fast rule. But I think because I think the language here is not mandatory, but rather is permissive. I understand that these things certainly make it less likely that undue emphasis will occur, but the language following where you just pointed out starts off with comments like it is preferable to have something done in open court. Ordinarily, we would make an admonishment. The court should proceed in a certain way. And so my point simply is that the court in Richard has said these things are helpful, but not necessary. But also it went on to say in Richard's case, the district court took none of the additional precautions. And so that seems to mirror the circumstance we have here, where none of the precautions were taken. Your Honor, I would disagree. I think these two cases are very factually distinct. Yes, ma'am. First of all, this is correct, that there were none of the standard precautions taken. In this case, the jury asked, in Richard's that is, the jury asked for the entire testimony. Here, the judge said, well, no, you're not going to get the entire testimony. You're going to get only key portions of the government's case. And so I think under those circumstances, an admonition is very important. Here we have the court saying in our current case, the court says, well, you're not going to get all of the entire testimony direct and cross. And so the need for the admonition is not as great. And then also, I'll leave it at that. But there are other distinctions. I think with regard to, let me turn this over. This was the key government witness, I take it. This was the best government witness, but it was not the only government witness. And was there a key contradictory defense witness? Yes, the defendant himself. But unlike, that was the next one, I was going to go back to Richard. Unlike the Richard case, in this case here, there were two witnesses that testified to the fact that the defendant threw an object. There were three witnesses, including Officer Torres, who said, well, when we went to the spot where this object hit, we looked and it was a firearm. So three people found the weapon or identified the weapon on the ground. Two people testified to the fact that a weapon had been thrown. And then both officers, Lee and Hastings, said it had a metal clang when it hit the ground. Was the weapon introduced as evidence? Yes, sir. So if a juror happened to know something about guns, the juror could look at it and say, hey, this is not a junk gun. This is a Sturm Ruger. It's a brand-name, good gun, long barrel. Yes, it will. And to be completely honest with you, Your Honor, that is a fine weapon, but this one had been weathered. So it wasn't, arguably speaking, it might not have been. I don't want to mislead you. You mean it didn't have the original parts? No. Well, I know I can't speak to that. It was, as far as I know, it was. It doesn't matter if they're ugly. Oh, well, then it sounds like a fine weapon to me. I mean, I'm talking about shooting value, not collector value. No, it was certainly functional. And that was, I mean, that was made clear. But the point that I was going to make, and I think Officer Hastings. I was thinking the jurors might draw inferences about how long it had been on the ground from the usability of the weapon itself. They possibly could. Regardless of what the lawyers thought to say to them. That's very true, Your Honor. They possibly could. Let me ask you something about Richards. Have I got this right that in Richards, the judge only decided to read only part of the witness's testimony back and the defendant objected and the judge went ahead anyway? And in our case, the judge decided to have all the testimony of the witness read back and the defendant, rather than objecting, said that was okay? That's exactly correct. And one of the arguments I was going to make is that this error is abiding. This is very different than the Perez case where you have a complicated issue of what jury instruction to submit. Here the case is simple. The question is simple. Yes or no? Is this testimony abiding? The attorney didn't say it was okay that the court did not read the party request. It just said it was okay how the jury, how the court wanted to proceed with the readback of the testimony it was going to read, because the defense asked for the all of it to be read, all that the jury wanted. It never acceded to the court's statement that it didn't, was not going to read all of it. Unless I misunderstood your question, Your Honor, I'd direct your attention to the court. It just said okay. It said okay, we're not going to read back the closing argument, but we will read back the testimony. And then the court turned to the parties and said what do you think about that? And the parties said that's fine. It's satisfactory to everybody? That's correct. Mr. Harder, yes. Mr. Beswit, yes. That's correct. And so you see that as a procedural thing. This is how we're going to proceed. But not that I agree that you shouldn't read back the part I want read. I think there has to be a clear, for it to be an abiding error, it has to be a clear, specific acknowledgment on the part of the attorney, that yes, I agree that you're not going to read back that portion even though I want you to. I see that as the court saying here's what I'm going to do, and what are you going to say? You can't do it that way? Your Honor, I would direct your attention to Alano, or excuse me, to Perez, which of course is kind of the governing piece of law here. And with regard to that, I'd direct your attention to the lower part of page 844. Under Perez, invited error can be committed in two or the invited aspect of it can be done in two ways. It can come through, as you're talking about, proposing a specific course of action or agreeing to a course of action. But the agreement has to be specific. Excuse me? The agreement has to be specific. And I think it was in this case because the question was binary. It was yes or no, once in or out. No, because invited error is forfeited. And when you have a forfeiture, it has to be clear, specific, knowing, forfeiture over right. That's what Perez says. It's not a waiver. It's a forfeiture. And forfeitures are not done by omission. Actually, Your Honor, I think it's the other way around. I believe that forfeiture is... I mean, right, waiver. Right. Right. And so you're absolutely right that there has to be a knowledgeable waiver. And specific. And I think it was in this case. I think that everyone knows when a jury question comes back, that becomes a laser beam focus on that question. The specific question is, is officer case and testimony going to go back or not? Yes or no? In or out? The parties knew that was the question, the right at issue, as soon as that question came out. To the extent that they didn't know that question was at issue, the judge then said, look... I understand. But as a judge, you say, I'm going to do five things in the court. And they say, okay. You don't know that they're saying okay to all five of them. That's my thing. And you see what I'm saying? If the court had said, I am not going to allow the readback of the defense statement, okay, and he had said, okay. But if the court says, I'm not going to allow the readback, I'm going to start at 2 o'clock, I'm going to... Then he said, okay. We don't know that he's actually waiving anything. That's my only... And that's fair, Your Honor. If the court gives a laundry list, we can't expect. But in this case, it's a little bit different because it was very specific. It was, I'm going to do, I'm going to say yes to the testimony. I'm going to say no to the argument. Any questions? And so it wasn't a laundry list. It was two specific... I understand your argument. I don't know that I buy it, but I understand it. Thank you, counsel. Your Honor, she, you're correct. She didn't agree regarding the readback. What happened was the judge spoke with his clerk, and they were discussing the plea that was coming in, and they were discussing the procedural aspect and how the readback was going to be conducted. And that's what she agreed to was to the procedural aspect. I thought, I'm looking at page 146 of the excerpts. The judge says we have a note from the jury.  I guess it's all of Officer Hastings' testimony. And then, I've never seen this before, closing comments of the defense attorney. Unfortunately, they won't get that. I'll explain that to them. I guess they want all of, when are they coming in for the plea, Madam Clerk? And he turns to the clerk, and then he turns back, I would gather, to the lawyers. I think you're saying this paragraph's to the clerk, but to me it makes no sense that way. He says, let's do this. Let's tell the jury, let's be sure we know what they want, and tell the jury that we'll send the court reporter in to read Officer Hastings' testimony right after we take the plea. Satisfactory to everybody? Ms. Harder, yes. Mr. Beckwith, yes. Were Harder and Beckwith the attorneys? Yes. I guess that's why I thought the judge was talking to the attorneys. I think he was talking to the clerk, because he says, Madam Clerk. You think he's just talking to the clerk when he's asking whether it's okay to respond to the jury note that way? No, no, no. Asking if the clerk thinks it's okay? No, no. I used to be a court clerk. I'm sorry? I used to be a court clerk before going to law school. And I think what happened here by reading this, all of a sudden the judge decides to talk to his clerk. But all of that wasn't really recorded. They were talking about a plea that was bound to happen. They were waiting to take a plea. And then the judge says, well, let's do this. Going back to the lawyers, let's tell the jury what we, you know, make sure we know what they want, et cetera. And then we'll have the court reporter read everything back after the plea. Is that okay? It was just a procedure. How was it going to happen? I don't think I understand what you're saying. Maybe talk a little louder, and I'll pick it up better. I'm looking at lines 9 through 13. And it looks like the judge is asking the lawyers whether one thing is satisfactory, and that's a readback of the policeman's testimony. After the plea. See, that's what I'm thinking. And he's saying, I'm going to do this after the plea. Is that satisfactory to everyone? Not the part that is it satisfactory that I'm not going to allow the argument, but is it satisfactory that we do it after the plea? It's two things that are combined. One, he's saying, I'm not going to allow the argument to go in, but we're going to do it after we take the plea. That's why I say it's not a waiver, because there are two things that are combined there. One may be satisfactory, and one may be not. I don't know. Sometimes when you're in court and you're talking at cross purposes, it's hard to say that somebody intentionally waived an issue when they were just saying, the court said, let's do this, and they say, okay. I don't take that as a waiver. Can you cite to me where the objection is? She didn't formally object. What plea is that? I assumed it was a plea in some other case that they had to take, but I don't know. The record doesn't state, but it appears to be a guilty plea. In some other case? In some other case. See, the judge received the note. The judge made a decision they're not going to get the closing argument. That was over. And then he speaks apparently with his clerk, and they talk about the plea that's coming up, and then the judge turns to the attorneys, and this is what we're going to do procedurally. Is that okay with everybody? And that's how I read this record. Are you do you happen to know that it was a plea in another case, or are you doing the same as I am, just inferring it because it makes sense? I'm only inferring it makes sense based upon the record. And the only thing I'd like to say is that Officer Hastings was a very key witness. He was the only witness who said he saw the object, and he didn't let his eyes off of it until it hit the ground. When he passed by, he looked at the ground and saw it was a gun. He saw it from beginning to end. He's the only one who could connect it from beginning to end. Right. Right. And so the readback unduly emphasized his testimony. Thank you, Counsel. The United States v. Ramsey is submitted. We are adjourned.
judges: Kleinfeld, Rawlinson, Restani